Good morning, your honors. Matthew Dirks on behalf of the petitioner appellant, Orlando Lopez, and with the court's permission, I'd like to reserve two minutes for rebuttal. Each year, this court sees perhaps thousands of cases in which petitioners seek federal habeas review on the basis that their trial counsel provided ineffective assistance. In the overwhelming majority of those cases, this court has little trouble concluding that even if performance had been deficient, petitioner would not be entitled to relief because the evidence against him at trial was overwhelming. This case we submit is different. The evidence against Mr. Lopez was far from overwhelming. He always conceded that he was present on the dark side of the fence with two other individuals when shots were fired into the backyard party. He's always disputed that he was one of the shooters. It's uncontested that Paul Braden, one of the individuals with whom he was with, was the primary shooter, and the question at trial was who was the second shooter, either Mr. Lopez or Kevin Stone. We would submit that the evidence strongly suggested that Kevin Stone was the second shooter. Kevin Stone was a longtime methamphetamine user who would use that day, drank copious amounts of alcohol. He admitted to having a 22 rifle with him that night. He later admitted to a jailhouse informant that he fired his gun over the fence. The problem is that whether we view this through the lens of insufficiency under Jackson or under ineffective assistance, we have to view it through the lens of EDBA. I mean, this is a very triable case. There's a lot of problems here, but a state court has reviewed all of this, and so we're limited to determining whether its resolution was reasonable. I absolutely agree, Your Honor. I think that is absolutely the prism through which the court has to view this, and it is absolutely through EDBA deference. Our position would be, and we're not making a sufficiency argument. It is strictly an IAC claim, but we think that the myriad failures of trial counsel absolutely rose to a violation of Petitioner's Sixth Amendment rights, and that's especially true with respect to the first claim, the failure to obtain an expert on firearm acoustics, and the most compelling evidence of the importance of that failure comes from the Court of Appeal itself, which, in its opinion, affirming the convictions on direct appeal, the Court of Appeal said, yes, there was absolutely differing evidence on the sounds of the gunshots, but the jury was given reasonable inferences for why the gunshots could have both been shotguns. Now, recall that people have always argued that Paul Brayden had shotgun. That's undisputed. They also argued that Mr. Lopez had a shotgun, and we know that Kevin Stone had a .22 rifle because he admitted that. Now, the witness descriptions of the gunshots strongly suggested two different types of guns, and the Court of Appeal, in saying even though there was evidence that the gunshots sounded different, there was nothing to lead the jury to the conclusion that that was because they were different guns, and the Court of Appeal expressly held, I'm going to quote, it says, no other evidence, such as expert testimony, contradicted that explanation. It's at 1 ER 53. So, in other words, the Court of Appeal itself recognized the overwhelming importance that an expert could have provided in informing the jury that one of the guns was a .22 rifle, and that's exactly what the expert that we found would have testified to. Isn't there evidence that the counsel did consider hiring an expert and decided not to? So, aren't you asking us to second guess that determination that counsel made at the time? Well, what I would say, Your Honor, is that when trial counsel said, yes, I had consulted with a firearms expert, but there's nothing in trial counsel's file to support that. There's no notes of any discussions he had. Trial counsel was unable to provide the name of the expert with whom he consulted. Trial counsel was unable to provide any substance of their discussions. He was unable to say what questions he asked the what the consultant's responses were. And when habeas counsel asked trial counsel to at least put in a declaration the fact that he had consulted with a firearms expert, trial counsel refused to take even that step. So, I don't think the record supports trial counsel's assertion that he did, in fact, consult with a firearms expert. I think the Court can reasonably conclude that based on the record, there was no consultation. And if there was, it certainly wasn't a meaningful one. Well, counsel, there's also additional evidence of serious mental health issues of trial counsel at that point, which I would think supports your argument that he wasn't credible. He had head injuries. He later committed suicide. He was paranoid and so forth. So, it seems to me that that bolsters your statement that he probably didn't consult anyone. And if he did, there's no discernible technical reason for failing to call on him. Agreed, Your Honor. And I think that the fact that sticks out in my mind is that he was caught at, I think, an auto parts store inhaling, you know, a dust off canister, a canister of clean dust off of hubcaps and interiors. So, he clearly was suffering serious issues. But again, I think there's just nothing in the record to support the notion that he actually made a meaningful consideration of whether to retain a firearms expert. And again, I would just suggest that that testimony would have provided powerful evidence for the jury that, yes, one shotgun was and the second gun almost certainly based on the witness's own descriptions. And one of these witnesses, by the way, Ross Parks described himself as a firearms expert to the jury. And he testified at the preliminary hearing that in his mind, one of the guns was either a small caliber gun or a pistol. And of course, a .22 rifle is a small caliber gun. And so, if an expert would have come in and testified, as our expert would have, to a reasonable certainty, which is what he was prepared to do, that one of the guns was a .22 caliber rifle, that would have eliminated or at least created serious doubt in the jurors' minds that the second gun used was a shotgun. And again, the prosecution has always asserted that Petitioner used a shotgun that night. And I think, again, there's no reasonable basis for counsel to have failed to take that step. And that step would have, I think, created more than a realistic probability that the outcome would have been different. I'll move on to our second claim of IAC, unless there's any further questions on the firearms expert. And again, it's a failure to call or to consult with an expert on that. I think Petitioner would have testified that prolonged and excessive methamphetamine use needs to aggressive behavior. It leads to reckless behavior. It leads to exceedingly violent behavior. And I think, you know, the state's response generally has been, well, sure, but people generally associate meth addiction with violence. Now, I don't know that that's true. I don't know that the general population associates meth addiction with violence, as opposed to, say, car burning or something along those lines. But this expert was prepared to testify, based upon data, based upon his scientific training, that meth, and I'm going to quote from his report, quote, methamphetamine users have over eight times greater odds of being convicted of criminal homicide than do non-users of methamphetamine. That's at 3ER344. I think, again, this expert testimony would have provided a jury with powerful evidence that Kevin Stone likely was the second shooter. As a longtime user of meth, he would have been more inclined, more prone to use violence, to act arbitrarily, to act aggressively. And again, there's no reasonable basis for counsel to neglect to call that type of witness. And we think that would have likely changed the outcome of the trial. Third instance of ineffective assistance relates to counsel's failure to use a wealth of prior statements by Kevin Stone. So, again, Kevin Stone was the linchpin for the prosecution. He initially was charged with murder, along with Paul Braden and Orlando Lopez. And then he secured a deal, in his own words, to, quote, save his ass. Well, but here's a point, you know, on this particular claim. This is one where Judge Alsa pointed out in his order. And this was kind of a delicate line to walk for counsel and really looks like a strategic judgment because, you know, Stone said that your client wasn't a sort of classic strategic judgment. Well, I believe a couple responses, Your Honor. First, I think what Kevin Stone testified was that he didn't see Orlando Lopez shoot his gun. I don't think he ever unequivocally testified that Orlando Lopez never used his gun. And by all accounts, and the Court of Appeal also found this, there were two shooters. So if the jury believes that Kevin Stone didn't shoot his gun, then they would have been left no choice but to believe that Orlando Lopez did, in fact, use a gun. And I think at the end of the day, that the only real strategic decision counsel had was to absolutely tear down the credibility of Kevin Stone because Kevin Stone was the only witness to testify that Orlando Lopez had a gun on the night in question. I'm sorry to interrupt, but the time is short. And it's my recollection that in the November 3rd interview, Stone said that he never saw Lopez with a firearm. And there's no indication, again, from memory, that trial counsel ever even saw or investigated that interview. His notes did not contain any reference to the November 3rd interview. Am I remembering that correctly? Mostly, Your Honor. It's absolutely true that counsel never reviewed, well, from his record, it seems clear that he never reviewed the second two statements, including the November 6th statement. There were no notes relating to that. In Kevin Stone's interview after the shootings, he never said that Petitioner had a firearm. He never said he saw Petitioner with a gun that night. That's the one interview with Kevin Stone that trial counsel's file reflects that he actually reviewed. And yet he never cross-examined Kevin Stone on Kevin Stone's failure to tell the police in his first interview after the shooting that the there was a wealth of evidence here. Trial counsel had the opportunity to significantly undermine the state's case, and his repeated failures to take necessary steps amounted to a violation of Petitioner's Sixth Amendment rights. And I see my time is about two minutes, so I'll reserve. You may reserve. Thank you. And we will hear from Mr. Lieber. May it please the court, Arthur Lieber for Respondent Dappelli. I'd like to start off by first addressing Judge Baber your questions about trial counsel's head injury. These are utterly irrelevant to these proceedings. The injury that caused his change in behavior occurred in 2014 after the conclusion of the 2012, the conclusion of trial in 2012, and after habeas counsel spoke with him in 2013. We litigated this below and it was not re-raised here. I just wanted to point that out that that's what the record shows. Turning to the first claim, the failure to call an acoustics firearms expert. As we explained in our brief, State Appellate Court could reasonably have denied this claim under both prongs of Strickland. I would like to note that the testimony of Ross Sparks was equivocal. Although at the PX he did testify that one of the shooters had used a rifle or a pistol at trial, he explained his experience in more detail. He did testify both weapons sounded like shotguns. That's at SER 62. When asked to explain why at the PX, he had mentioned a rifle. He said that to him, a shotgun is a rifle. That's at extract of record 867. So had the expert opined based in large part on Ross Sparks testimony, it would have been ripe for a cross-examination on the basis of this. One of the questions we have to ask is whether the State Court reasonably concluded that Strickland's prejudice prong wasn't met and the prejudice prong is that there's a reasonable probability of a different outcome. When the Court of Appeal tells us on direct review that by making the comment no other evidence such as that explanation, isn't that kind of telling us that there's a reasonable probability that expert testimony could have made a difference? No, your honor. In making that comment, the Court of Appeal was addressing on direct appeal a challenge to the sufficiency of the evidence in which Lopez had argued, you know, look at this compelling evidence of somebody else being the shooter. At the same time, he had a state habeas petition with Mr. Teese. Specifically on the sound issue. So if the Court of Appeal, you know, weighing the somewhat complex and confusing testimony on sound, then, you know, says at the end that, well, there was no expert to contradict any of this. And now they come forward with an expert and say, you know, actually this would have made a difference. Doesn't that seem unreasonable to conclude it have created a reasonable probability when the Court of Appeal highlights its absence? No, your honor. Again, we're dealing with when examining the sufficiency of the evidence claim that was before that court. They're looking at the state of the evidence that had been presented to the jury. Had Mr. Teese had testified as an expert and been extensively cross-examined, then of course they could have considered that expert. But I don't think that that falls into anything more than a partial reason to reject Lopez's argument regarding the sufficiency of the evidence. Counsel, I guess I would like to also ask you about the cumulative effect on the failures. It seems to me that the three items that the opposing counsel has raised, combined with the jury instruction point, cumulatively, I fail to see how it's reasonable to have concluded that that universe of failures would not have made, likely have made a difference to the outcome of the trial. Well, your honor, it's our position that there were no errors other than the failure to request instruction on accomplice corroboration, accomplice testimony corroboration, which was harmless. That's a trial court error, but I'm talking about counsel's failures to failing to call the firearm sound expert, failure to call an expert about the violent behavior of meth addicts that would have more likely to have become angry, plus the inconsistent statements. It appears that counsel never even saw the November statements that still made, failure to investigate those, plus the error on the instructions. So it just seems to me that all that taken together, I don't understand how the state court came out the way it came out, to be frank, just speaking for myself, obviously. Your honor, no court has found that the trial counsel committed any of those errors under Strickland. So there is no error to cumulate the prejudicial effect of. As we explained in our decisions in light of the evidence at trial, it is not. I failed to see that they were, they were tactical, I guess, that are either in reality or in speculation. Well, I mean, I'll give you an example. The absence of notes in trial counsel's file regarding the second statement doesn't mean that he didn't review it. Perhaps they didn't make it into the file. Perhaps he just listened to it and decided to not take notes. Perhaps he, what would be his reason for not bringing in Stone's statement that Lopez never had a firearm? There were multiple. So he did, that testimony was already before the jury. Brayden's cross-examination of Stone, which occurred prior to Lopez's cross-examination, had gone over Stone's plea deal, his methamphetamine use, and his statements, his first statement in particular, regarding those types of things. And had counsel decided to focus on the conflicting statements, which sometimes changed in the final November 3rd statement, for instance, Stone began by saying Lopez never had a gun. And then after some chastisement changed his story to, yes, I did see that he had a gun. Had counsel elected to focus on this aspect of the case, the conflicting statements that Stone had given, he might have utterly eviscerated Stone's favorable testimony that he hadn't paid attention to where Lopez was, never saw him fire his gun. Stone was not a terrible witness in total for the defense. Trial counsel could reasonably have decided to focus his efforts elsewhere. It's not the case that this was... What would be the tactical reason, in your view, for not calling an expert to describe the effects of methamphetamine addiction? There was plenty of evidence that he was a meth addict. But as I saw it, and I may be mistaken, but there was nothing to tie that to behavior to say that a person who does that is extremely likely to become violent when angry as compared with someone who's not a meth heavy meth user. I can give you a variety of reasons. The first would be that no such expert, at least not the forensic psychiatric expert that Appellant desires, is available. He only presents the declaration of a pharmacist, which probably would not have carried as much weight with a jury as a medical doctor. Moreover, as I cited in a brief, the effects of drugs like methamphetamine are widely understood by the population at large, and trial counsel could have relied on his familiarity with the jury pool in that county at the time. Breaking Bad came out in 2008. A third result might be... Not everybody's watched it. I understand, Your Honor. It's just, you know, again, circumstantial evidence of trial courts, excuse me, trial counsel's familiarity with general knowledge about methamphetamine. And more to the point, in this case, we don't just have his use of methamphetamine. We have his heavy use of methamphetamine. We have his admission that he sold methamphetamine, that he exchanged methamphetamine. None of that has to do with an admission that people in his trial counsel... Situation where people were mad at each other and, you know, maybe should have ended with a fistfight, but ended with death. Trial counsel could reasonably have decided to focus his limited resources instead of on trying to find a favorable medical expert on methamphetamine use, again, relying on his understanding of what the jury pool already was familiar with, and looking at the state of the evidence. He's not an omnipotent person capable of finding any expert to say anything he wants, focus on his time and effort on that. Moreover, again, here, I don't even know that that type of evidence would have been admissible because it's essentially character evidence. He used methamphetamine, therefore he's more likely to commit murder. That wouldn't have been admissible against Appellant. It wouldn't have been admissible against Braden. I'm not sure that the trial court... Are you saying that there would be no admissibility of general expert testimony on the effects of methamphetamine? There would be if that wasn't an element of offense, of course, or if it went to the defendant's intent, but this is as to a third party culpability issue, not directly as to Lopez or Braden, because at no point did they use methamphetamine, at least on the state of this evidence. So again, this is a defense theory of exculpating themselves by saying this is a third party culpability, it was stoned. But again, that was not the only defense available, and that was not the defense that the trial counsel sought to pursue. He reasonably decided to look at others. There was another person there, I believe his nickname was Goofy. Trial counsel asked several questions trying to get at where was Goofy during the shooting, you didn't see him, how tall was he? He also had a history with these groups. He had been at the party, but then disappeared shortly before the shooting. He attacked the forensics. There were a lot of issues with this case. Trial counsel was obligated to approach them in the manner that appellant desires now with the benefit of hindsight. Again, with the firearms acoustics expert, the testimony upon which that expert would have based his opinion is debatable and conflicting and easily explainable by panic, fear, different shotguns, different shells. There are too many ways for an expert's opinion in that case to render it an ironclad certainty. I'm sorry, I forgot the name, Hutchinson, the case where the height evidence was not presented and it was a video using mathematical calculations of the height of the shooter based on the perspective of the camera. That type of expert opinion might have carried more weight based on the inarguable mathematics of the situation. Here we have one witness testifying, they kind of sounded different, and another one saying one person was holding a rifle at the PX, but then he explained the sound was both shotguns. There's not really a strong basis here for counsel to have assumed that an expert would have been worth his time and would have been effective with the jury. And certainly given the double deferential review here on AEDPA, the state appellate court could have reasonably concluded that. Likewise, when you're looking at the expert testimony on methamphetamine use, trial counsel was familiar with the jury pool there. He knew that the jury was well aware that Stone was involved in these shootings and fled and had extensive experience consuming, using, selling, and trading methamphetamine. There's no reason to believe that the Constitution compelled him to go find an expert, that again, appellate doesn't really present other than a pharmacist, to find an expert that would try to convince the jury, assuming that that evidence was admissible, that because Stone used methamphetamine that made him, I don't know where to go with this, eight times more likely to have committed the murder. That just seems laughable on its face. Moreover, it is looking at the impeachment of Stone with his prior statements. Again, you know that he's entitled to rely not just on his cross examination, but on Brayden's prior cross examination. And he doesn't have to delve into Stone's conflicting statements when that might reasonably be seen to result in the prosecutor simply rehabilitating Stone's inculpatory testimony. Counsel could have reasonably decided, you know what, I'm, I got in the part that he never saw him fire his gun. I'm going to leave it there and then rely on that in closing argument as he did. Certainly again, the state appellate court could have reasonably found that that was reasonable performance and didn't result in a reasonable probability of a different result. Now, if you are asserting that these were actually strickland errors and that the state appellate court was unreasonable in concluding that there prejudice would accumulate. But for the reasons given in our brief, and as explained here, we do not believe that trial counsel committed any errors other than failing to request an accomplice instruction, which was harmless, a harmless error. Unless the court has any particular questions on any of these issues that we're prepared to submit. I don't believe that we do. Thank you. And Mr. Dirks, you have some time. Unmute. Unmute, please. Thank you, Your Honor. I'll be brief. Trial counsel absolutely pursued the defense that Stone was the second shooter, that Lopez was not the second shooter. And all of the instances of IAC we've raised would have gone directly to that defense. I have not heard any strategic justifications from the state that would have justified the myriad failures of trial counsel. Counsel for the state also discussed the confusing evidence surrounding the witness testimony of the sound of the gunshots. But I would just refer the court back to the Court of Appeals opinion where it noted that, quote, the weight of the evidence suggests the firearms sounded different. That's the Court of Appeals conclusion. And if the firearms sounded different, an expert would have been able to testify that two shotguns, the sounds that they make would have been indiscernible to witnesses in the backyard. The only reason this shot sounded different was because different guns were used. An expert, as the Court of Appeals has noted, would have provided powerful testimony that would have allowed the jury to reach that conclusion. Unless the court has any further questions, I'm prepared to submit. Thank you, counsel. The case just argued is submitted and we thank you both for your arguments and we will be adjourned for this morning's session. This court for this session stands adjourned.
judges: GRABER, COLLINS, CHOE-GROVES